In the

# United States Court of Appeals

### For the Seventh Circuit

No. 22-1872

ADELAIDA ANDERSON, individually, and as Administrator of the Estate of JEFFREY LEE ANDERSON, deceased,

*Plaintiff-Appellant*,

*v.*

THE RAYMOND CORPORATION,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 19-cv-800 — **Stephen P. McGlynn**, *Judge*.

ARGUED DECEMBER 1, 2022 — DECIDED FEBRUARY 1, 2023

AMENDED MARCH 2, 2023

Before EASTERBROOK, HAMILTON, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Adelaida Anderson worked as a standup forklift operator at a FedEx warehouse in Effingham, Illinois. While pulling a load in July 2017, she hit a bump and fell out of the forklift onto the floor. The forklift continued

moving and ran over her leg; the resulting injuries necessitated its amputation.

Anderson brought this diversity suit against the forklift's manufacturer, The Raymond Corporation, alleging that the forklift was negligently designed. As trial neared, the parties filed dueling motions over the admissibility of the testimony of Dr. John Meyer, one of Anderson's experts. Meyer believed that Raymond could have made a number of changes to its design that would have prevented Anderson's accident. Meyer's primary suggestion was that Raymond equip each of its forklifts with a door to enclose the operating compartment, which would prevent operators like Anderson from falling into the forklift's path. Like other standup forklift manufacturers, Raymond offers doors as an option that some customers choose, but Raymond does not fit doors to its forklifts as standard. Raymond says it resists fitting doors as standard because a door could impede the operator's ability to make a quick exit in the event the forklift runs off a loading dock or begins to tip over. The district court concluded that Meyer's opinion about the absence of a door was inadmissible because it did not satisfy Federal Rule of Evidence 702 or the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (The district court admitted Meyer's opinions on other potential design improvements, which are not at issue on appeal, so we say no more about them.)

The jury found that the forklift was not defectively designed and returned a verdict in Raymond's favor. Anderson unsuccessfully moved for a new trial, arguing then and on appeal that the erroneous exclusion of Meyer's opinion was substantially prejudicial to her case. We agree and reverse.

No. 22-1872                                                          3

I

The erroneous exclusion of evidence warrants a new trial only if the error had a substantial and injurious effect or influence on the jury's decision. *Bintz v. Bertrand*, 403 F.3d 859, 869 (7th Cir. 2005). We start with the question of whether the district court erred when it excluded Meyer's testimony.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 611 (7th Cir. 2017). Rule 702 provides that a qualified expert witness may offer an opinion if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. See *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) ("[T]he district court must evaluate: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.") (emphasis omitted). Because "much depends upon the particular circumstances of the particular case at issue," the Rule 702 analysis is case-specific. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); see also *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 835 (7th Cir. 2015) ("Ultimately, reliability is determined on a case-by-case basis.").

Our review of an expert's exclusion proceeds in two steps. *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993–94 (7th Cir. 2019). We first determine de novo whether a district court has adhered to Rule 702. *Haley*, 863 F.3d at 611. So long as the district court adhered to its requirements, "we

shall not disturb the district court's findings unless they are manifestly erroneous"—that is, only if they amount to an abuse of discretion. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607–08 (7th Cir. 2006) (citation omitted). If, however, the district court failed to conduct the requisite analysis, we review the expert opinion's exclusion or admission de novo. *United States v. Adame*, 827 F.3d 637, 645 (7th Cir. 2016). A court "must provide more than just conclusory statements of admissibility or inadmissibility to show that it adequately performed its gatekeeping function." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010); *Naeem*, 444 F.3d at 607–08.

Here, the district court addressed Meyer's methodology in one sentence: "This Court finds that John Meyer's opinion that Raymond was negligent or that its forklift is dangerously and defectively designed because it does not come standard with a compartment door, especially one that locks or latches, simply does not pass the *Daubert* test." That is a conclusion—not an analysis—to which we owe no deference.

Raymond argues that the district court's analysis was more substantial—that it made a reasoned finding when it wrote, "John Meyer's analysis and efforts in this case are not sufficiently exhaustive or thorough to green light a jury to consider rejecting the engineering consensus on this specific matter." As Anderson noted, Raymond conveniently omits two essential words from the beginning of that sentence: "Raymond argues." When pressed about this selective omission at oral argument, Raymond doubled down, arguing that the district court adopted Raymond's arguments by starting the next sentence with "Indeed." We are not persuaded. Even if we were, nothing would change. What follows "Indeed" is nothing but reliance on other courts that

excluded similar opinions: "Indeed, other courts have concluded that witnesses opining that a compartment door should be affixed to a [forklift] lacked sufficient reliability … to allow their presentment for a jury's consideration." That the door-as-standard opinion has been rejected elsewhere tells us nothing about Meyer's methodology, and a district court's decision to admit or exclude expert opinions must rest "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Thus, relying on a history of excluding the same conclusion elsewhere—without evaluating methodological or factual similarities between the proffered expert's opinion and those previously excluded—would still necessitate de novo review.

We conclude that Meyer's opinion should have been permitted. First, considering his "full range of practical experience as well as academic or technical training … in a given area[,]" we agree with the district court that Meyer is qualified to offer his opinion. *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (citation omitted). Meyer has extensive training—he received his doctorate in mechanical engineering from MIT—and experience in failure analysis. He has spent most of his professional career investigating machine accidents and performing accident reconstructions. He even has a license to operate a stand-up forklift like that at issue here, albeit not this specific model. Raymond argues that Meyer is unqualified to offer his opinion because he has limited experience with forklifts. That focus is misplaced. An expert's specialization or lack thereof "typically goes to the weight to be placed on [her] opinion, not its admissibility." *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016); *Gayton*, 593 F.3d at 617 (citation omitted) ("Ordinarily, courts impose no requirement

that an expert be a specialist in a given field."). Meyer's extensive familiarity with accident reconstruction and training as a professional engineer qualify him to render opinions on what could have been done to prevent Anderson's injuries.

Second, we consider the reliability of Meyer's opinion by making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592–93. Some factors we look to include: (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593–94). "No one factor is dispositive, however, and 'the Supreme Court has repeatedly emphasized [that] the Rule 702 test is a flexible one.'" *Timm*, 932 F.3d at 993 (alteration in original) (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000)). At all times "the correct inquiry focuses not on 'the ultimate correctness of the expert's conclusions,' but rather on 'the soundness and care with which the expert arrived at her opinion.'" *Timm*, 932 F.3d at 993 (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)).

Meyer's insights stem from his training and experience investigating industrial accidents. Meyer visited the FedEx warehouse with Anderson to reconstruct (to the best of Anderson's recollection) what happened. He reviewed troves of data generated from forklift accidents. He noted that

Raymond implemented structural measures to guard against tip-over events, where a forklift goes forks-first over a ledge or is improperly balanced while carrying a load. (Recall, the need for a quick escape in such situations was Raymond's justification for not fitting a door as standard.) Meyer looked to operators who elected to install the optional door Raymond offers and found no increase in tip-over injuries. From all of this, Meyer concluded that Raymond's reliance on training and warnings, as opposed to structural changes like those implemented to prevent tip-overs, was insufficient to mitigate the risk of an accident like Anderson's. Given that Raymond designed and offered a door as an option, Meyer concluded that installing it as standard was feasible and would reduce the frequency of crush accidents like Anderson's.

Raymond, however, insists that Meyer's methodology is flawed. Pointing to our opinion in *Dhillon v. Crown Controls Corporation*, Raymond argues that Meyer's failure to conduct his own tests renders his door opinion categorically inadmissible. 269 F.3d 865 (7th Cir. 2001). Not so. While in *Dhillon* we held that a district court did not abuse its discretion in excluding an expert who failed to design or test his proposed forklift door, we expressly rejected the notion that hands-on testing is an absolute prerequisite to the admission of expert testimony. *Id.* at 870. Just two years ago we reiterated the point, holding that the "absence of testing represents only one factor in the *Daubert* analysis." *Kirk v. Clark Equip. Co.*, .991 F.3d 865, 877 (7th Cir. 2021). We reaffirm that conclusion today even though the underlying principle is obvious. An expert hoping to testify about benzene's effects on children need not expose children to benzene. See *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 626 (7th Cir. 2009) ("[T]he defendant has never explained what kind of test could be performed … except to

remove the same rivet from an identical ladder, have a 350-pound man climb halfway up and start poking with his hands in the ceiling, and see what happens."). That Raymond markets Meyer's proposed alternative underscores our conclusion: when data are available from another source, there's no need to duplicate that information by testing. See *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 815 (7th Cir. 2012) ("We do not require experts to drop a proverbial apple each time they wish to use Newton's gravitational constant in an equation."). Raymond's customers who have elected to fit their forklifts with Raymond's optional door have been testing Meyer's alternative for him. Raymond can critique the use of those customers as comparators, but such arguments go to the weight, not the admissibility, of Meyer's testimony.

Raymond next argues that Meyer's methodology is unacceptable because the conclusions that flow from it have been rejected elsewhere. By now it should be clear that this is an insufficient basis for excluding an expert's opinion—our inquiry focuses on the expert's methodology, not whether we agree with his conclusions. In a similar vein, Raymond points to its decades of experience designing forklifts and to its long history of defeating claims like Anderson's in courts across the country as reasons to exclude Meyer's opinion. Neither is relevant to the Rule 702 inquiry, which is concerned only with Meyer's ability to aid the jury in this case. The same can be said of Raymond's appeal to the authority of the American National Standards Institute. While ANSI may suggest a preference for open operating compartments, we are aware of no case stating that an expert who disagrees with ANSI's suggestion is categorically barred from testifying. Just the opposite: "ANSI's [recommendation,] standing alone, is [not] a

dispositive consideration." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 845 (7th Cir. 2017).

Given that Meyer's methodology rests on accepted scientific principles, Raymond's critiques go to the weight his opinion should be given rather than its admissibility. The opinion satisfies Rule 702's reliability requirement.

The final requirement—relevance—is uncontested. This is a product defect case; demonstrating a viable alternative that could have prevented Anderson's injury is the whole ballgame. Meyer's door opinion is thus relevant to the jury's task.

Because Meyer is qualified, his methodology is sound, and his opinion is relevant, his door opinion should have been admitted.

II

Not all errors require a new trial, and we will reverse an evidentiary ruling only when we are left with a firm conviction that the district court's error could have affected the jury's decision. Fed. R. Civ. P. 61; *Hall v. Flannery*, 840 F.3d 922, 926–27 (7th Cir. 2016). Here, we have no difficulty concluding that the exclusion of Meyer's opinion could have seriously affected the jury's verdict. Meyer was the only expert Anderson offered to testify on the effect of a door, and a door was Meyer's primary alternative design suggestion. A new trial is required.

\* \* \*

The district court's denial of Anderson's motion for a new trial is REVERSED, the judgment is VACATED, and the case is REMANDED for proceedings consistent with this opinion. None of the foregoing should be read to curb the district

court's ability to control the testimony offered at trial. Meeting Rule 702's requirements does not exempt an expert from independent prohibitions on, for example, irrelevant, confusing, or unfairly prejudicial testimony. We leave to the district court's considered discretion all other evidentiary issues. Furthermore, we have no doubt that the district judge can offer the parties a fair retrial, so we override our standard practice of reassigning a case remanded for a new trial. See Cir. R. 36.